THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PETER A. Cocco, Appellant.

Argued March 6, 1953; decided May 28, 1953.

*Joseph Speranza* and *Thomas J. McKenna* for appellant. I. The court erred in disallowing defendant's demurrer to the indictment. (*People* v. *Farson,* 244 N. Y. 413; *People* v. *Zambounis,* 251 N. Y. 94; *People* v. *Cox,* 286 N. Y. 137; *People* v. *Parkinson,* 43 N. Y. S. 2d 690; *People* v. *Robertson,* 201 App. Div. 869, 235 N. Y. 548.) II. The facts from which the inference of appellant's guilt was drawn were not established with certainty, were inconsistent with his innocence and failed to exclude to a moral certainty every other reasonable hypothesis. (*People* v. *Dukatt,* 298 N. Y. 545; *People* v. *Bearden,* 290 N. Y. 478; *People* v. *Buchalter,* 289 N. Y. 181; *People* v. *Elmore,* 277 N. Y. 397; *People* v. *Leavitt,* 301 N. Y. 113; *People* v. *Ledwon,* 153 N. Y. 10; *People* v. *Lewis,* 275 N. Y. 33.) III. The court erred in amending the indictment on its own motion from grand larceny in the first degree to grand larceny in the second degree and the court erred in not granting the motion on behalf of defendant for a dismissal of the indictment at the close of the

People's case. (*People* v. *Grout*, 91 Misc. 451; *Ex Parte Bain*, 121 U. S. 1; *People* v. *Motello*, 142 N. Y. S. 622; *People* v. *Bromwich*, 200 N. Y. 385; *People* v. *Geyer*, 196 N. Y. 364; *People ex rel. Battista* v. *Christian*, 249 N. Y. 314.) IV. It is respectfully requested that the Court of Appeals order the District Attorney's office to produce to this court for its inspection and examination the minutes of the Grand Jury in this case. V. The court erred in refusing defendant's request for a new trial after the court had learned that the alternate juror in the case had communicated with a member of the jury after the jury had begun its deliberations. (*People* v. *Hartnett*, 124 Misc. 418; *People* v. *Kendricks*, 273 App. Div. 998, 300 N. Y. 544; *People* v. *Brown*, 193 App. Div. 203; *People* v. *Hartung*, 17 How. Prac. 85; *People* v. *Sprague*, 217 N. Y. 373; *People* v. *Birnbaum*, 114 App. Div. 480.)

*Jack E. Gellman, District Attorney* (*William H. Earl* of counsel), for respondent. I. The indictment was sufficient and proper. (*People* v. *Devinny*, 227 N. Y. 397; *Commonwealth* v. *Pray*, 13 Pick. [Mass.] 359; *People* v. *Cox*, 286 N. Y. 137; *Tuttle* v. *People*, 36 N. Y. 431; *Tully* v. *People*, 67 N. Y. 15; *People* v. *Cashdollar*, 188 App. Div. 9; *People* v. *Daghita*, 301 N. Y. 223.) II. The evidence adduced on the trial established the guilt of defendant beyond a reasonable doubt and with moral certainty excluded any hypothesis of innocence. (*People* v. *Giordano*, 213 N. Y. 575; *People* v. *Harris*, 136 N. Y. 423.) III. The court had the power to amend the indictment from grand larceny, first degree, to grand larceny, second degree. (*People ex rel. Poulos* v. *McDonnell*, 302 N. Y. 89.) IV. The trial court properly denied defendant's motion for an inspection of the minutes of the Grand Jury and the determination is not appealable. (*People ex rel. Hirschberg* v. *Supreme Court*, 269 N. Y. 392; *People* v. *Ewald*, 144 Misc. 657; *People* v. *Guenther*, 65 Misc. 150; *People* v. *May*, 158 Misc. 488; *People* v. *Jakeway*, 88 Misc. 124; *Matter of Montgomery*, 126 App. Div. 72, 193 N. Y. 659; *Matter of Martin*, 170 Misc. 919; *People ex rel. Martin* v. *Brady*, 168 App. Div. 108; *People* v. *Kramer*, 151 Misc. 210.) V. The denial of defendant's request for a new trial after disclosure that the discharged alternate juror had attempted to communicate with a member of the jury was proper. (*People* v. *Sprague*, 217 N. Y. 373; *People*

v. *Caputalo,* 138 Misc. 344; *People* v. *Lubin,* 190 App. Div. 339, 229 N. Y. 601; *People* v. *Brown,* 193 App. Div. 203; *People* v. *Birnbaum,* 114 App. Div. 480.)

LEWIS, Ch. J. The defendant stands convicted by a County Court jury of Niagara County of grand larceny in the second degree.

Following rendition of the jury's verdict, counsel for the defendant applied by motion in County Court for an order setting aside the verdict against him and for a new trial. Among grounds asserted in support of that motion was misconduct by jurors (Code Crim. Pro., § 465, subds. 2, 3), the defendant's claim being that his rights were prejudiced by the occurrence presently to be described. That motion was denied by the County Court. Thereafter, upon appeal by the defendant to the Appellate Division, that court by its order withheld its determination and granted " leave to the defendant to renew the motion for a new trial solely on the ground of misconduct of jurors, so that the Niagara County Court may hold a hearing on that phase of the motion and render a decision thereon." (279 App. Div. 1129.) Upon the defendant's renewal in County Court of his motion for a new trial, thus limited in scope, and the subsequent denial of that motion, the Appellate Division, by the order now before us, after reviewing the original record of the trial and a supplemental record containing proceedings had and testimony taken in County Court at the hearing held upon defendant's renewal of his motion for a new trial, affirmed the judgment of conviction and denied defendant's motion for a new trial.

As to facts of record which relate themselves to the problem presented: At the outset of the trial the County Judge, in the exercise of the discretion vested in him by section 358-a of the Code of Criminal Procedure, directed that an alternate juror be selected. In accord with that direction Kenneth Huntsman was chosen as an alternate juror and, being seated with the regular panel during the eight days of trial which followed, he was required by statute to " * * * obey the orders of and be bound by the admonition of the court upon each adjournment * * *." (§ 358-a, *id.*) It was not until the late afternoon of the last day of the trial — when the case was finally submitted to

the jury — that alternate juror Huntsman was discharged by the court. The jury's verdict was not rendered until an early morning hour of the following day. Meantime, during their deliberation, there came a time when the members of the jury left the courthouse in the custody of court officers and proceeded to a local hotel for dinner. As they walked double file toward the hotel dining room they passed in front of and within a few feet from the former alternate juror Huntsman who was seated in the lobby. As the double line of jurors passed Huntsman they " nodded to him " and he " answered their Hellos ". None of the jurors conversed with him until Mrs. Ricker — one of two jurors at the rear of the line — was about to pass him. When she was in front of his chair Huntsman, by a " backward motion " of his head " beckoned to " her. Having paused momentarily in response to Huntsman's gesture, Mrs. Ricker bent over to hear what he had to say, his statement to her in a " lowered voice " being — " I just heard Cocco [the defendant] runs a sporting house on West Avenue." To that statement Mrs. Ricker replied, " I don't believe it " and proceeded at once into the dining room.

During the deliberations of the jury the County Judge and prosecutor learned of the Huntsman-Ricker incident above described, but defendant's counsel were not informed of it by Judge or prosecutor. It was not until much later, and after the verdict had come in, that one of defendant's attorneys learned about it from another source. Meanwhile, and after the jury's verdict had been received, the County Judge had taken from Mrs. Ricker, in the presence of the prosecutor, a statement about the occurrence, but defendant's counsel were not notified of this proceeding and were not present thereat.

The dire reflection upon the character of the defendant was made by Huntsman to one of six women jurors in the panel who were then sitting in judgment on the case; it was made by the erstwhile alternate juror who had sat for eight trial days throughout the taking of evidence and thus knew that the defendant had put his character in issue by being sworn as a witness in his own behalf and that he — as a defense measure — had called witnesses who had testified that his character was good; it was made in the course of a brief conversation between two members

of the jury panel — one a regular juror, the other a discharged alternate — each of whom, on twenty-six occasions during the trial, had heard the court give the admonition required by section 415 of the Code of Criminal Procedure and had repeatedly heard from the court the further admonition — " If anybody should attempt to discuss the matter with you at all you should immediately communicate that fact to the Court and let me know if anyone does attempt to discuss it with you."

Although Mrs. Ricker expressed to Huntsman her disbelief in the statement he had made to her and subsequently stated under oath that she had put out of her mind whatever he had said and that she had not mentioned to the jury or commented upon her conversation had with Huntsman, and although it appears from her affidavit that the statement made by him had no part whatever in the deliberations of the jury, we cannot say, in the circumstances disclosed by this record, that the furtive hearsay statement concededly made by Huntsman to a member of the jury, while that body was considering issues of fact submitted for its determination — including the defendant's character — did not prejudice defendant's substantial rights.

The judgments should be reversed and a new trial ordered.

FULD, J. (dissenting). What Huntsman, the discharged alternate juror, did was, of course, wrong, but equally clear is it that the jurywoman, Mrs. Ricker, in no way acted improperly. However, even if we were to regard as misconduct her failure to report to the trial judge Huntsman's remark, the statute empowers the court to grant a new trial when the jury has been " guilty of any misconduct ", *only* where the defendant's " substantial rights have been prejudiced," and *only* where such misconduct has " prevented " a " fair and due consideration of the case " (Code Crim. Pro., § 465, subd. 3). Study of the record before us is not only convincing, but truly conclusive, that no happening here prevented such an appraisal.

It was established as clearly and definitively as was humanly possible that the juror did not believe what Huntsman told her, that his comment made no impression whatsoever upon her, that she dismissed it from mind, did not mention it to any other juror and was not in the slightest influenced by it. Moreover — and it is of particular significance — the trial judge and a

unanimous Appellate Division, denying the new trial application, found those to be the facts. That being the state of the record, I fail to see how this court may say, as a matter of law, that the facts are precisely the opposite and conclude that defendant was prejudiced. And, since Mrs. Ricker's vote was not induced or affected by Huntsman's comment, whether or not that incident should have been handled differently by district attorney or trial judge — and I do not believe that it should have been — is of no moment. As a matter of fact, to have questioned or admonished the jurors about the matter before rendition of the verdict would only have called attention to, and emphasized, something about which none except Mrs. Ricker knew anything at all.

An accused has his rights, and they must not be relaxed, but the state has its rights too. It is for the courts "to keep the balance true." (*Snyder* v. *Massachusetts*, 291 U. S. 97, 122.) Where, as in the case before us, guilt has been proved to the hilt and the asserted misconduct had not the slightest influence upon any juror, no right of the defendant was prejudiced and there is no warrant for the grant of a new trial.

The judgment should be affirmed.

CONWAY, DESMOND and DYE, JJ., concur with LEWIS, Ch. J.; FULD, J., dissents in opinion in which FROESSEL, J., concurs; LOUGHRAN, Ch. J., deceased.

Judgments reversed, etc.