Burke, J.
Blair Young, an employee of Buffalo Automatic, Inc., arrived at work at approximately 8:00 a.m., on May 11, 1963, only to discover that the company’s premises had been burglarized the previous night. Further investigation on his part disclosed that the company safe had been opened. He then summoned members of the safe and burglary squad of the Buffalo Police Department who immediately responded to his call. A subsequent search led to the discovery of certain tools apparently used by the burglar. One of the investigating officers *164 then took the tools and proceeded to the Buffalo suburb of Cheektowaga where he spoke to a hardware store clerk, Walter Neubauer.
Mr. Neubauer had been previously instructed by the Buffalo police to report sales of certain items to them as part of a general plan to combat crime. Accordingly, when he sold an axe and crowbar to two men on May 8, he made a notation of the license plate of the vehicle used by the purchasers and notified the police of the sale. When the detective arrived at the hardware store three days later with the axe and crowbar, Neubauer was able to positively identify the items as ones that he had sold. A trace of the license plate number revealed that the car had been rented on that day by one Esther Bozeman, whom the police knew was a friend of defendant James Pelow, a suspected burglar.* While the investigation was proceeding as outlined above, a Detective Sergeant Quinn, in charge of the Buffalo safe and burglary squad, immediately suspected Pelow and, responding to this intuitive inclination, ordered his arrest on an outstanding assault charge.
Sergeant Quinn found Pelow at the Markeen Hotel in the presence of Miss Bozeman and another girl. After arresting Pelow, the sergeant suggested to Miss Bozeman that she accompany them to police headquarters for questioning concerning the burglary. At this time, the officer had no information directly linking her to the crime. Nevertheless, Miss Bozeman was placed in the custody of a policewoman and taken to police headquarters where she was booked on a charge of vagrancy. At the time of her arrest, she had over $500 on her person, secreted in the bottom of her pocketbook.
Following the arrest of the defendants, Sergeant Quinn ordered the arrest, also on the assault charge, of Pelow’s sister, Mrs. Kelly. When the police arrived at her apartment, they were greeted by another sister of the defendant Pelow, who informed them that Mrs. Kelly was not at home. The police entered the premises, apparently with permission, and found a briefcase and pail containing coins which were later identified as the fruits of the burglary.
*165 After these coins had been seized, Sergeant Quinn commenced questioning the defendant Bozeman about the burglary. During this interrogation, she admitted that she accompanied Pelow and another man to Cheektowaga on May. 8, and that they purchased some tools on that occasion. While she was being interrogated, Mr. Neubauer was brought to the station house and, after viewing six men in a room for a considerable period of time, identified the defendant as the person who had purchased the tools from him, several days before.
The defendants were tried jointly. James Pelow was convicted of grand larceny, burglary in the third degree and possession of burglar’s tools and sentenced to imprisonment of from 10 to 20 years. His codefendant and spouse, Esther Bozeman, was convicted of grand larceny and sentenced for from one to three years: The convictions were unanimously affirmed by the Appellate Division, Fourth Department. We granted leave to appeal.
Appellants present four points for our consideration. They argue: (1) that the coins found in Mrs. Kelly’s apartment were illegally seized; (2) that the station house identification of Pelow by the witness was unnecessarily suggestive and constituted a denial of due process; (3) that Esther Bozeman’s statement that she was with Pelow when he purchased the tools should not ¡have been read in evidence against her, and (4) that the court erred in not redacting the reference in the afore-mentioned statement to defendant Pelow.
The Judge at the suppression hearing concluded that the officers searched the apartment of Mrs. Kelly with the consent of her sister. This affirmed finding precludes the defendants from asserting that the coins found in the apartment were illegally seized. It is thus unnecessary for us to consider the additional conclusion of that Judge that the defendants lacked standing to object to the search and seizure on the ground that they were not occupants of the premises.
Appellants’ second argument, pertaining to the station house identification of the defendant Pelow, does not convince us that the identification procedure was “ so unnecessarily suggestive and conducive to irreparable mistaken identification ” as to aim mint, to a denial of due process. (Stovall v. Devmo, 388 U. S. 293, 302.) At the time of the identification, Mr. Neubauer *166 was asked to identify the defendant while viewing six men in a room. Five of these men were police officers in plain clothes. There was nothing distinctive about them that would cause Mr. Neubauer to immediately select the defendant. On the contrary, the fact that he took over 15 minutes to make his identification illustrates the fairness of the procedure. Since evidence of prior identifications is expressly permitted by statute (Code Crim. Pro., § 393-b) and, since the procedure employed was proper and in accord with our prior decisions (see People v. Brown, 20 N Y 2d 238; People v. Ballott, 20 N Y 2d 600), we conclude that this identification was proper and did not deny the defendant due process of law.
Defendant Bozeman contends that the court committed reversible error when it admitted her statement that she was with Pelow when he purchased the tools used in the burglary. Her contention is virtually identical to that advanced, quite recently, in People v. Jackson (22 N Y 2d 446).
In that case, defendant Shelly Jean Jackson was arrested for vagrancy by two members of the Rochester homicide squad. Police records listed him as a homicide suspect and the arraigning Judge denied bail. The sham was completely unveiled by the fact that the vagrancy charge was then completely forgotten. To cull from our opinion in that case: ‘ ‘ there is not the slightest indication that the.police ever seriously considered a bona fide prosecution for that offense.” (22 N Y 2d, p. 452.) While defendant Bozeman was initially booked on a vagrancy charge, the record nevertheless clearly demonstrates that this charge was a sham. Esther Bozeman was arrested by a member of the Buffalo safe and burglary squad. Her arrest, made while she had over $500 on her person, was attributable solely to the fact that she was a close friend of defendant Pelow who was the suspected burglar at that time. Under these circumstances, we reiterate what we said in Jackson that “ statements taken from a defendant after he [or she] has been subjected to a sham arraignment, usually for vagrancy, are inadmissible” (22 N Y 2d, p. 451). As we view the record, the major portion of the total evidence presented against defendant Bozeman consisted of her statement •—■ given while in custody under a sham arraignment—that she was with defendant Pelow when he purchased the tools used in the burglary. Accordingly, her *167 judgment of conviction should be reversed and a new trial ordered.
Defendant Below contends that the unredacted admission into evidence of the above statement was a denial of his right to confrontation and cross-examination which cannot be cured without a new trial. His contention is predicated on recent decisions of both this court and the United States Supreme Court. (See People v. Baker, 23 N Y 2d 307; People v. Jackson, 22 N Y 2d 446, supra; Roberts v. Russell, 392 U. S. 293; Bruton v. United States, 391 U. S. 123.)
While we acknowledge the impropriety which occurred when this statement was introduced, we cannot accept the defendant’s . contention that this single error mandates a new trial. Eliminating the statement from the record, we are left without any evidence to connect defendant Bozeman with the purchase of the crowbar and axe and very little evidence to connect her with the crime itself. The independent evidence is overwhelming, however, when we consider defendant Below’s guilt. As we noted at the outset, Walter Neuibauer, the clerk at the hardware store, testified that the defendant Below and another man had bought these tools from him. His story was buttressed by his prior identification of the defendant and by his ability to recognize the tools as merchandise handled by his store. Finally, it should be noted that the purchase of the tools in and of itself was not a criminal act and was not a basis for the punishment subsequently imposed. Bather, the statement merely referred to the commission of an act preparatory to the burglary. In this setting, neither justice, common sense nor prior judicial decisions warrant a new trial.
It should be noted that we neither approve nor condone the admission of this statement against the defendant Below. However, as the Supreme Court remarked in Bruton, ‘ ‘ ‘ A defendant is entitled to a fair trial but not a perfect one.’ Lutwak v. United States, 344 U. S. 604, 619 ” (391 U. S., p. 135). Were this statement deleted from the record, there would remain an overabundance of admissible evidence establishing the defendant’s guilt beyond a reasonable doubt. (See People v. Kingston, 8 N Y 2d 384, 387; People v. Cocco, 305 N. Y. 282, 288.) The error committed must, therefore, be considered harmless pursuant to our rules of criminal procedure. (Code Crim. Bro., § 542.)
*168 The judgment of conviction of defendant Bozeman should be reversed and a new trial ordered; the judgment of conviction of the defendant Pelow should be affirmed.
Chief Judge Fuld and Judges Scileppi, Bergan, Keating, Brbitel and Jasen concur.
In People v. James Pelow: Judgment affirmed.
In People v. Esther Bo&eman Pelow: Judgment reversed and a new trial ordered.

 The defendants were married subsequent to their arrest and prior to the trial. I shall refer to the defendant Esther Pelow by her maiden name, Esther Bozeman.