Keating, J. (dissenting).
Walter gher was convicted of two counts of murder in the first degree and sentenced to death. If gher had received a fair trial, the proof introduced by the People would amply justify his conviction. It is the pride, however, of American jurisprudence that the most cold-blooded ldller is entitled to the same essentials of a fair" trial as the most upright pillar of society, gher’s trial was infected by a number of unauthorized telephone communications to jurors in the middle of the trial. We believe, because of the nature of these communications, that a great likelihood existed that the jury could not have reached its verdict solely on the evidence introduced at trial, These communications, therefore, deprived gher of being convicted by an impartial jury, one of the fundamental requirements of due process.
The majority, in finding these communications harmless, fail to perceive that our task is to evaluate the possible prejudice to the defendant by the rule announced in Chapman v. California (386 U. S. 18), since the defendant was denied one of the basic mandates for a fair trial. In Chapman, the gupreme Court stated that “the beneficiary of a constitutional error * * * [must] prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. ’ ’ (Id., p. 24.) Applying this. test to the instant case, we must *459 find that a substantial likelihood existed that the jurors considered the unauthorized communications in arriving at their verdict.
The District Attorney completed the People’s case on Wednesday, October 23, 1963. Defense counsel made a number of motions at this time. All were denied. The court then dismissed the jurors and asked them to return on Friday morning when the defense would start presenting its case. Before the jury was permitted to return home, the court admonished them that they were not to discuss the case among themselves or with anyone else. The Judge also directed them not to read or listen to any accounts of the trial in newspapers or on television. The jury was then permitted to go home. This admonishment had been given numerous times before as required by section 415 of the Code of Criminal Procedure.
When the jury returned on Friday, it was brought to the court’s attention that a number of unauthorized communications had taken place and that the jurors discussed these communications among themselves. In order to determine the extent of the problem the Judge called each juror and alternate individually into his chambers, in the presence of counsel, and inquired if they received a communication, whether they had discussed it with other members of the jury, and asked the extent of their knowledge of other communications. The Judge conducted the investigation. He asked each juror to describe briefly what occurred. Though counsel were both present they did not fully participate in questioning the jurors. (See People v. Colascione, 22 N Y 2d 65.)
It came to light that an unidentified female had telephoned a number of jurors on Thursday evening. She urged that the jury convict the defendant. She asked a few jurors to disregard the defense of insanity. She also remarked that Sher was a vicious killer, disregard the defendant’s attorney, vote for the electric chair, Sher must be found guilty, ignore the plea of insanity and disregard the testimony of the defendant’s psychiatrists. During one call she told juror Nachbar that Sher had a criminal record and that his co-felon Carbonaro had been found guilty and sentenced to death. The anonymous caller only reached five members of the jury. It was apparent, however, from questioning the jurors, that those jurors who *460 had not received calls had, upon arrival at court, either held or overheard conversations detailing the substance of the calls. All the jurors, however, assured the Judge that they would not be influenced by what had occurred and not draw any inference from it. The jurors each promised the Judge that they would only decide the case on the evidence introduced during the trial.
The defendant moved for a mistrial. The prosecution admitted that the comments made to juror Nachbar were prejudicial and suggested that Nachbar be withdrawn. Defense counsel did not concur in the District Attorney’s appraisal of the situation and insisted on a mistrial. The Judge denied the motion, and the trial was continued with the same panel.
The District Attorney argues that, with the exception of the comments made to Nachbar, the others discussed by the jurors were not prejudicial. The other comments the District Attorney analogizes to statements that could have been read in newspapers, heard on the radio or uttered by the District Attorney at trial. He .stresses that, even if this information were known by a juror before trial, this would not furnish ground to challenge the juror for cause, if, as was the case here, the juror stated he would not be influenced (Code Grim. Pro., § 376, subd. 2).
The District Attorney’s argument is premised on the supposition that the prejudice to the defendant could have been purged by eliminating Nachbar and, since defense counsel refused to agree to his dismissal, the defendant waived his right to object to the composition of the jury.
The District Attorney’s argument, we believe, is deficient in two respects. Though the statements that Sher was a vicious killer, that the psychiatrist should not be believed, give him the works, etc., might not be sufficient grounds for excusing a prospective juror if he had heard these comments before trial, it is clear, in this case, that these comments were the impetus for extensive discussions among the jurors before the case was given to them. The subtle psychological effect of this information on the decision-making process cannot accurately be measured. The impact must have been substantial, however, because of the manner in which it was injected in the case and the subsequent en masse violation of the Judge’s instruction not to discuss the case among themselves.
*461 Secondly, a reading of the record is bound to leave one in ■grave doubt whether the removal of Nachbar would purge from possible jury consideration the prejudicial statements made to him. It is not clear that the dismissal of any one juror could correct the possibility of a biased jury deliberation. The People cannot show that, .under the circumstances, the defendant would not be substantially prejudiced even though Nachbar had been dismissed. The Judge’s examination of the jurors makes it obvious that all the . jurors discussed the telephone calls. Though no other juror expressly testified that he know of Nachbar’s call, and Nachbar was not asked whether he told anyone else, we believe a substantial likelihood existed that all, or at least some of the jurors, were- also infected with the knowledge that Nachbar carried in with him on Friday morning.
In People v. Coceo (305 N. Y.282) we reversed a conviction of second degree grand larceny because a prejudicial comment was made to. one juror. Following the jury’s verdict, the defendant moved to have the judgment of conviction set aside because of the unauthorized communication between a dismissed alternate juror and a woman juror made during a dinner break while the jury was deliberating. The alternate told the woman juror that he had heard that the defendant 1 ‘ runs a sporting house on West Avenue ”. The regular juror responded “ I don’t believe it” (supra, p. 286). After the verdict was rendered, defense counsel learned of the conversation and asked for the verdict to be set aside. The Judge conducted a hearing which developed that this was the only communication. It also appears that the jurors in Coceo did not discuss the information among themselves. We reversed and ordered a new trial. We stated: 1 ‘ Although Mrs. Bicker' [the original juror] expressed to Huntsman [the alternate] her disbelief in the statement he had made to her and subsequently stated under oath that she had put out of her mind whatever he had said and that she had not mentioned to the jury or commented upon her conversation had with Huntsman, and although it appears from her affidavit that the statement made by him had no part whatever in the deliberations of the jury, we cannot say, in the circumstances disclosed by this record, that the furtive hearsay statement concededly made by Huntsman to a member of the jury, while that body was considering issues of fact submitted for its deter *462 mination—including the defendant’s character—did not prejudice defendant’s substantial rights.” (305 N. Y. 282, 287, supra.)
In Parker v. Gladden (385 U. S. 363, 364) the Supreme Court reversed a State court conviction because a bailiff, mentioned in the presence of three jurors: ‘ ‘ Oh, that wicked fellow, he is guilty ”, and “ If there is anything wrong the Supreme Court will correct it.” The Supreme Court remarked: •“ [w]e believe that the unauthorized conduct of the bailiff • invokes such a probability that prejudice will result that • it is deemed inherently lacking in due process ’ ” (supra, p. 365).
In People v. De Lucia (20 N Y 2d 275, 280) we granted reargument in light of Parker. Be Lucia was a case in which some of the jurors had made an unauthorized trip to the scene of the crime. We remarked: “ In this type of case, proof of the fact of the unauthorized visit is sufficient to warrant a new trial without proof of how such visit may have influenced individual jurors in their juryroom deliberations. Such a visit, in and of itself, constitutes inherent prejudice to the defendants.”
We believe the case before us presents an infinitely more serious tampering with the jury than was present in the cases cited.
Notwithstanding the holdings in these cases, the prosecution raises the spectre of other mistrials in the future to dissuade us from reversing in this case. We do not see this case, if a reversal and new trial were ordered, however, as putting a wedge in the door by which either unscrupulous police-officers, District Attorneys or defense counsel can scuttle a criminal prosecution by simply making a telephone call. In this, case, five jurors were contacted in the middle of trial.. The jurors disobeyed the Judge’s instruction and failed to report the unauthorized communication to him. In addition, and more importantly, they extensively discussed the communications among themselves. Another relevant factor is that the calls were made before the defense called its first witness, belying the possibility that the defendant motivated the calls. Sher’s principal defense was insanity, and he made out a strong case.
The troublesome problem of posttrial attack on a jury’s verdict is not involved in this case. No chance exists that a reversal in this case will “ encourage convicted felons to *463 ‘ intimidate, beset and harass ’ * # * a discharged jury in an effort to establish possible grounds for a new trial ” (Parker v. Gladden, supra, p. 369, dissenting opn. by Harlan, J.).
The majority in support of the proposition that mere questioning and admonishing a jury is sufficient to purge from its consideration obnoxious extra-judicial communications cite no case upon which reliance can fairly be placed. None of the cases referred to dealt with instances of jury tampering.
In light of the prior precedents in this court and in the Supreme Court, the defendant’s conviction should be reversed and a new trial ordered.
Judges Scileppi, Bergan, Breitel and Jasen concur in Per Curiam opinion; Judge Keating dissents and votes to reverse in a separate opinion in which Chief Judge Fuld and Judge Burke concur.
Judgment of conviction, as amended, affirmed.