THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
LEONARD SMALLS, Appellant.

First Department, May 19, 1981

APPEARANCES OF COUNSEL

*Howard B. Comet* of counsel *(William E. Hellerstein,*
attorney), for appellant.

*Allen Alpert* of counsel *(Marguerette Hosbach* with him
on the brief; *Robert M. Morgenthau, District Attorney,*
attorney), for appellant.

## OPINION OF THE COURT

Ross, J. P.

The fundamental issue presented on this appeal is
whether the trial of this defendant should have been severed
from that of his codefendant. The defendant asserts that
his oral confession was not "interlocking" with the written
confession of codefendant, Anthony DeShawn McGee.
Therefore, it is urged the trial court erred when it denied
defendant's motion for severance. A majority of this court
finds this argument unpersuasive.

On December 7, 1976, Anthony McGee, Philip Green and
defendant executed a plan, fashioned by Mary Jenkins, to

rob the apartment of Pedro Pratt. During the course of this crime, Pratt was fatally shot. Several days prior to this incident, Jenkins observed decedent display a large sum of money to Jenkins' brother, while the two were in the latter's bedroom. Jenkins then formulated her plan. According to her testimony, she was not an active participant in the robbery because the Pratts were neighbors and she would be easily recognized. To accomplish this task she enlisted the aid of her boyfriend, Green, who was also known as "Jake".

On the night of this incident, Green was accompanied by McGee and Smalls. After McGee's arrest, he detailed his participation in this crime initially in an oral confession, then in a written, signed confession and finally in a stenographically recorded confession. McGee did not testify. Nor did he present any witnesses on his behalf. The investigating police officers testified for the People. According to McGee's confession, he was recruited by Green who asked if he wanted to earn approximately $1,700. McGee readily consented and was told that Jenkins "had set something up". Before departing for Jenkins' apartment, Green returned a gun to McGee, which had been loaned to a mutual friend. On the way to this rendezvous, this duo encountered a third acquaintance by the name of "Lenny", the defendant herein. Green informed defendant about the planned robbery and all three proceeded to Jenkins' apartment.

Upon arrival at the apartment, Jenkins and Green proceeded to her bedroom where the details of the robbery were finalized. Shortly thereafter Green and Jenkins emerged and rejoined the others, who had remained in the living room. Once the group was together Jenkins discussed the plan with all three men. According to Jenkins, Green wanted to call the plan off for that evening because defendant was "high". Defendant denied that he was incapable of proceeding and asserted that he wanted to go along with "it". Thereafter, all four left the apartment with Jenkins believing that the robbery had been canceled.

As they proceeded down the stairs of the building, these four individuals encountered their selected target, Pedro Pratt, and his friend Edward Tyler, who were about to

enter the Pratt apartment. They had returned to the apartment to obtain additional money in order to continue gambling activities. Jenkins stopped to talk to Pratt while her three male companions continued to descend the stairs. Jenkins testified that she spoke to Pratt about purchasing some marihuana. When Pratt mentioned the price, she stated she had no money with her and would have to return to her apartment. She then went back upstairs. Tyler remained in the hallway and Pratt entered his apartment.

As Tyler was standing there, the three males, who had been accompanying Jenkins, returned. Tyler testified that each held a gun. The defendant placed a pistol to Tyler's head while McGee forced open the door to the apartment, which was being held shut by Pratt. Once inside, McGee aimed a revolver at Pratt and announced that "it was a stickup".

The defendant forced Tyler into the bathroom where Smalls patted him down. Green remained in the hallway and was acting as a lookout. McGee was in another room of the apartment and demanded to know where the money was located. According to McGee, at this point Pratt leaped towards him and struck his arm which held the pistol. The pistol had a "hair trigger" and discharged. This statement was tempered by later admissions of McGee. After this shot was fired, McGee and Smalls allegedly fled. However, other members of the Pratt family, who were in the apartment at this time, testified that these two individuals, McGee and Smalls, completed the robbery.

At the time of the shooting, Jenkins was in her apartment. After she heard the shot, she asked her brother to accompany her to Green's apartment. All four had agreed that this would be the assembly point if the robbery occurred. Everybody, except defendant, arrived. At Green's apartment McGee, in answer to a question posed by Jenkins, stated that he shot Pratt "right in the face" after Pratt had "jumped" him. Thereafter, this group departed. Several days later Jenkins encountered McGee, who once again admitted shooting Pratt. McGee bragged that he was a "marksman" and had shot deceased "directly between the eyes".

Five weeks after the shooting defendant was arrested. After administration of the appropriate warnings, defendant gave an oral statement to the authorities. This statement was later reduced to writing; however, defendant refused to sign it. Defendant did not testify or present any witnesses on his behalf. According to the investigating officers, defendant admitted meeting McGee and Green on the night of the felony murder. Defendant asserted that he was on his way to buy some wine. When Green informed him that all three were heading in the same direction, defendant accepted the invitation to join them. At no time during this meeting, according to defendant, did anyone mention a robbery. On their way, however, the three men stopped at the apartment of Jenkins, who was introduced to defendant as a cousin of Green. Green and his cousin proceeded into the bedroom, while defendant and McGee remained in the living room. After approximately 10 minutes, the two returned to the living room. Thereafter, all four departed and no one had discussed plans for a robbery.

As they reached the first floor of the apartment building, defendant noticed two men standing in the hallway. Jenkins approached one of the men and began talking to him. Defendant and his two acquaintances proceeded to the front door of the building. Upon reaching this point, defendant noticed that McGee had withdrawn a gun and ran back to the two men to whom Jenkins had been speaking. Defendant and Green followed. McGee then pushed his way into the Pratt apartment. Once again defendant followed and while inside the apartment, he heard McGee demand several times, "Where is the money?" After the second uncomplied with exhortation, McGee shot Pratt. Immediately after the shooting, defendant allegedly attempted to aid both the slain man and Pratt's mother. He then hurriedly left the apartment and according to his statement, ran home where he stayed all night.

The single issue now dividing this court is whether defendant was denied his Sixth Amendment right of confrontation when the trial court admitted into evidence the confession of Smalls' codefendant, when that codefendant failed to testify or present any evidence on his behalf. The dissent argues that the confessions of McGee and Smalls

were not interlocking. We disagree and find that these confessions are substantially similar so that the *Bruton* rule *(Bruton v United States*, 391 US 123) has not been transgressed.

In a joint trial where the extrajudicial confession of a codefendant adds substantially to the People's case and where this declarant is not subject to cross-examination, it is error to admit this confession *(Bruton v United States, supra)*. However, this rule and the application thereof are not inflexible and the Court of Appeals of this State, has refused to apply it in a vacuum. In *People v Baker* (26 NY2d 169, 173), the court stated: "[W]e have not blindly applied *Bruton*. Rather, we have looked to the actual effect of the implicating confession on the complaining defendant in determining whether the rationale underlying *Bruton* is applicable or, even if applicable, whether in light of all the other evidence in the case, the error should be characterized as harmless." In addition to this harmless error analysis, the general propositions of *Bruton (supra)* are held not to apply "where each of the defendants has himself made a full and voluntary confession which is almost identical to the confessions of his codefendants." *(People v McNeil*, 24 NY2d 550, 552.) It is this analysis to which our attention now focuses.

Smalls' and McGee's confessions are substantially similar in almost every material respect. Both men admit meeting Green at a certain intersection on the night of the incident and then walking to Jenkins' apartment. Both acknowledge that they remained in the living room while the other two proceeded to a bedroom, from where they emerged a few minutes later. Both state that all four left the apartment together and that Jenkins stopped to talk to two men while the three males proceeded to the front door of the building. At this point both concede that they returned to where Pratt was standing outside his apartment and that McGee had drawn his gun. Defendant then indicates that he followed McGee into the apartment and heard McGee demand money on three occasions. According to both, a shot then rang out and both fled.

To counter this mass of evidence, defendant asserts that

the confessions are not interlocking because he was not aware that a robbery was being planned and he was merely out on an errand to buy wine. Secondly, he maintains that his presence at the Pratt's apartment was merely an effort to "assist" McGee, reasoning that McGee or Jenkins was being assaulted.

An objective review of these alleged differences demonstrates that they comprise a veiled attempt to obscure the realities of the situation. The statement of the defendant, and the confession of codefendant McGee both place the defendant at the scene of the commission of the crime and have him actively participating in it. Defendant's claim of innocence falls limply aside under careful scrutiny. Defendant observed McGee, with pistol in hand, rush back to the Pratt apartment. The victim was attempting to flee. Defendant followed and once in the apartment heard his accomplices announce a robbery. Indeed, this scenario belies defendant's claim that he returned to help Jenkins who, according to defendant, was in trouble. The clear import of these activities is that defendant was not out on an errand, or returning to assist a friend, but rather that he was an equal partner in this deadly crime. The statements of McGee and Smalls support this conclusion and are so interlocking that there is no violation of the *Bruton* rule.

Even were we to determine that the confessions are not completely interlocking, defendant's conviction should be affirmed in light of the overwhelming evidence against him. In *Harrington v California* (395 US 250), the Supreme Court held, on facts similar to those now before this court, that a *Bruton* error was harmless beyond a reasonable doubt on the grounds that the evidence against the accused was overwhelming. In *Harrington (supra)*, which was a prosecution for a felony murder committed in the course of a robbery, the accused, like Smalls, made statements to the authorities which fell short of a confession, but which placed him at the scene of the crime. Harrington indicated that his codefendant shot the victim. Here defendant placed the blame for the shooting on McGee. In addition, in *Harrington*, the robbers fled and there were eyewitnesses to the crime. On the facts before us, defendant admitted that he fled, and Edward Tyler, deceased's companion, and other

members of the Pratt family testified as to defendant's participation in this crime.

On the question of the magnitude of the evidence against defendant Smalls, the dissent concedes that: "[i]t cannot be denied that the evidence against Smalls was substantial." This writer concludes that the evidence was overwhelming and, accordingly, a recapitulation of the facts is appropriate. Jenkins identified defendant as one of the two men who came with Green to her apartment. Tyler positively identified defendant Smalls as one of the two gunmen and also testified that defendant Smalls held a pistol to his head. In addition, Smalls admitted to being in Jenkins' apartment on the evening of the incident and later followed McGee, who had a pistol drawn into Pratt's apartment. He remained in that apartment while McGee demanded the "money", and was in the apartment when McGee shot Pratt. In addition, there was testimony that this defendant went through the victim's pockets as the victim lay prostrate after having been shot.

The record before us convincingly demonstrates that the evidence substantiating defendant's participation in and guilt of this crime was overwhelming. Any characterization of this evidence other than overwhelming is trained. Any violation of the *Bruton* rule, if there be any, is, therefore, harmless beyond a reasonable doubt.

As the dissent concedes, the form of the confessions, whether they be written or oral, is merely one factor to weigh in considering whether the general propositions of *Bruton* (391 US 123, *supra*) are applicable. Under the facts of this case, there is no reason to conclude that the form of the confessions had a material impact on the jury.

Accordingly, the judgment of the Supreme Court, New York County (MELIA, J., at motion to sever and *Huntley* hearing; CARRO, J., at *Huntley* hearing, trial and sentence), rendered on June 6, 1978, convicting defendant after trial by jury, of the crime of murder in the second degree, and imposing a sentence of 17 years to life, should be affirmed.

SILVERMAN, J. (concurring). I concur in Justice ROSS' opinion. I add only the following comments:

The portion of McGee's statement that is criticized as not interlocking with Smalls' oral statement is "Jake told this guy [Smalls] what we planned to do."

1. The issue at the trial as to defendant Smalls was not whether he knew that a robbery was being attempted but whether he was the alleged second robber in the apartment at the time of the shooting, i.e., a pure issue of identification. Indeed, in a sense it may be said that intent was not really a controverted issue at the trial. Nobody at the trial disputed that the two men who burst into the victim's apartment were intent on robbery. Smalls' factual contention simply was that he was not one of those two men. In his summation, Smalls' attorney never even adverted to the question of whether Smalls knew that a robbery was planned. He merely argued misidentification.

2. McGee's statement to the police officer was redacted in a manner that was agreeable to all parties (without waiving the point that there should have been a severance). The criticized portion of McGee's statement was not redacted. When it was read at the trial there was no objection. But three pages later, Smalls' attorney said that the criticized portion "should have been redacted. I don't know why it was not." Smalls' attorney's failure to object when the criticized portion was read and his oversight in failing to get this portion of the statement redacted precludes objection on appeal to the criticized portion of the statement.

3. Neither the District Attorney in his summation nor the court in its charge ever referred to the criticized portion of McGee's statement.

4. According to Smalls' own statement, when "Jake" (Green) and Jenkins came out of the bedroom Smalls asked what was happening, and "Jake" replied, "We are going to do it now."

BLOOM, J. (dissenting). Defendant Smalls appeals from a judgment convicting him of felony murder. He and one Anthony DeShawn McGee were both convicted of murder in the second degree. McGee was sentenced to 20 years to life while Smalls was sentenced to 17 years to life. I would reverse as to Smalls.

On December 7, 1976 Green (Jake), who was the boyfriend of Mary Jenkins, Smalls and McGee met at the Jenkins apartment. According to Jenkins[1] the purpose was to plan a robbery of the Pratt family which resided in the same building. Jake and Jenkins repaired to a bedroom where they conferred. When Jake emerged from the bedroom he called the plan off for that night, asserting that Smalls was "high". According to Jenkins, Smalls protested that "he wasn't too high to go along with it, that he wanted to go anyway".

A short time later the four left Jenkins' apartment. In the hallway they met Pedro Pratt and Edward Tyler. Jenkins inquired whether Pratt had a "reefer" and was informed that the price was $1. She turned back to get the money. While this conversation took place the three men continued onward. Suddenly, McGee turned back, followed by Smalls.[2] Each is alleged to have brandished a gun. They forced Pratt and Tyler into the Pratt apartment. Tyler was shut up in the bathroom. Money was demanded of Pratt. Ultimately, he was shot and four days later, he died. Pratt and the members of his family were robbed. There is testimony that Smalls went through Pratt's pockets as he lay prostrate after having been shot.

There is little doubt but that the evidence presented was sufficient to support a verdict that both defendants were guilty of felony murder. However, there are two issues presented which pose questions requiring discussion.

The first issue deals with the charge by the trial court on intent. After defining the term as "the frame of mind [necessary] to establish a certain purpose or to effect a certain rule" the trial court indicated that it was to be "determined from all of the facts and the circumstances by what the person did and what the person said, or by a combination of both". It then proceeded with the language that "the law says that a person is presumed to intend the natural consequences of his act". Two sentences later there

---

1. Jenkins, who was originally a codefendant in this case, was permitted to plead guilty to robbery and was sentenced to a 10-year term of imprisonment. She testified that she expected the prosecutor's assistance in connection with her appearance before the Parole Board.

2. We are not told whether Green was ever charged with any of the crimes here involved.

followed: "what the law says is that a person is presumed to intend that which he actually does". This language, it is contended, transferred the burden of persuasion from the prosecution to the defendants and, therefore, violated the command of *Sandstrom v Montana* (442 US 510; see, also, *People v Marr*, 50 NY2d 456; *People v Thomas*, 50 NY2d 467).

While, ordinarily, specific intent is an essential ingredient of a crime, in the case of felony murder any such intent is immaterial. Indeed, felony murder is distinguished, in part, from common-law murder by the absence of need to prove an intent to kill. Substituted for intent is the commission or attempted commission of the predicate felony. "[I]n felony murder the underlying felony is not so much an element of the crime but instead functions as a replacement for the *mens rea* or intent necessary for common-law-murder. This view accords with the historical development of the felony murder doctrine and the legislative policy reflected in its current statutory descendant, both of which underscore the fact that the corpus of the crime is the killing of another." *(People v Berzups*, 49 NY2d 417, 427.)

Thus, even were we to hold the *Sandstrom* charge improper, it would not affect the outcome for it was not necessary for the prosecution here to establish an intent to kill.

The second issue, which is raised on behalf of Smalls only, is of far more serious import. Jenkins was interrogated by the police the day following the shooting. She denied any involvement in the crime. Some three weeks later McGee was picked up by Detective Degnan. He made three separate statements in which he admitted his participation in the robbery and admitted firing the shot which killed Pratt. The first was an oral confession of guilt to the homicide squad detectives. The second was a written statement drafted by the detective to whom the oral statement was made and was based upon McGee's oral statement. It was signed by McGee. The final statement was a confession given to an Assistant District Attorney in question and answer form. McGee in his admissions and confessions involved "Lenny" (Smalls), "Jake" (Green) and "Mary" (Jenkins).

Approximately two weeks later Smalls was taken into

custody. He made an oral statement to Detective Carreras, who arrested him, in which he admitted his presence at the scene of the crime. However, he denied any participation either in the robbery or shooting, attributing his presence to a number of fortuitous circumstances. He told Carreras that on the night in question he was on his way to purchase some wine when he met Jake and McGee in the street. They informed him that they were on the way to Jenkins' house and invited him to join them. He did so. He added that when they were leaving the building he suddenly saw McGee turn back. Believing that McGee was being attacked by Pratt, he ran into the Pratt apartment where he witnessed the shooting by McGee. He then fled. Carreras reduced the oral statement to writing but Smalls refused to sign it. An Assistant District Attorney was called who took a question and answer statement. However, an off-the-record conversation, which consumed approximately one half hour, preceded the administration of the *Miranda* rights by the assistant.

McGee and Smalls both moved to suppress their statements. As to McGee the motion was denied in its entirety. Smalls' motion was granted to the extent of suppressing his unsigned statement and the question and answer statement given to the prosecutor. His oral statement was held to be admissible.

Prior to trial Smalls moved for a severance and a separate trial, contending that the differences between the McGee and Smalls statements raised grave problems with relation to the *Bruton* rule *(Bruton v United States*, 391 US 123), and raised a strong possibility that he would be deprived of his right of confrontation in violation of the Sixth Amendment. This motion was denied. However, the court agreed to and did redact McGee's statements. Smalls' counsel made no objection to the redaction. At the trial, the McGee statements and the Smalls statement were introduced in evidence. At the time of the introduction of McGee's statements, the trial court cautioned the jury that these statements could be considered as evidence only of McGee's guilt and did not bear on the issue of Smalls' guilt or innocence. Unfortunately, however, he failed to repeat this caution in his final charge.

Preliminarily, we are confronted with two problems dealing with the admission of McGee's statements; first, whether the failure by Smalls to object to the redaction of those statements and the failure to object at the time of the introduction of the statements in evidence, constituted a waiver of his *Bruton* rights and thus failed to preserve that issue for review by us; secondly, whether the fact that McGee's statement was written and Smalls' statement was oral, precluded the use of those statements.

We think that the second issue is disposed of by *People v Woodward* (50 NY2d 922). That case makes evident that the fact that one of two codefendants has made a written statement while the other has made only an oral statement, is but one element to be considered in determining the admissibility of both statements. Where otherwise both statements would be admissible, this single disparity between them will not warrant their exclusion.

With regard to the first point, we think the issue was preserved. To begin with, there was a motion for severance and for separate trials. When McGee's statement was redacted, the court expressly noted that it was without waiver of Smalls' claim to the right of severance. Further redaction posed dangers to the prosecution's case for the exclusion of "Lenny" together with the inclusion of "Jake" and "Mary" might well have been construed by the jury as an indication of "Lenny's" innocence. In light of the denial of the motion for a severance and the reservation of that claim at the time of the redaction of McGee's statement, objection at the trial to the introduction of McGee's statement would have been an empty formality.

On balance, we think it clear that Smalls' actions, known to the trial court, made manifest his objection to the introduction of McGee's statement and thus preserved the issue for review.

We come, then, to the merits of the *Bruton* claim. The rule in *Bruton* (391 US 123, *supra)* is not an absolute, to be applied mechanically. The courts have recognized the devastating potential of the denial of the right of confrontation. However, as our Court of Appeals has noted, there are circumstances where a *Bruton* violation does not man-

date a reversal. Thus, in *People v Berzups* (49 NY2d 417, 425, *supra*), it asserted: "we have been unanimous in our realization that a codefendant's confession need not violate the spirit of the *Bruton* rule when the implicated defendant himself has made a confession close enough to the one offered against him to make the probability of prejudice so 'negligible' that in the end 'the result would need to be the same' * * * The justification for this exception is that separate confessions, so duplicative in their description of the crucial facts that the one of the nontestifying codefendant may be of no measurable consequence in the face of the overwhelming and largely uncontroverted evidence contained in the interlocking confession of the defendant himself" (see, also, *People v Safian*, 46 NY2d 181; *People v McNeil*, 24 NY2d 550).

Nor is reversal warranted where the evidence is so overwhelming that the erroneous introduction of the codefendant's statement can reasonably be said not to have affected the verdict reached by the jury *(Harrington v California*, 395 US 250; *People v Pelow*, 24 NY2d 161).

Here, the statements of the codefendant can scarcely be said to be interlocking. While McGee inculpated himself completely, his statement also imposed responsibility for the planning and execution of the robbery on Smalls, Jake and Jenkins. Smalls' statement, on the other hand, while it paralleled those of McGee in certain details, was at odds with McGee's statements on the most salient point at issue, the planning and execution of the robbery. Clearly, then, these statements were not interlocking and were improperly admitted against Smalls.

There remains only the question of the effect of the admission of McGee's statement. It cannot be denied that the evidence against Smalls was substantial. It may well be that he would have been convicted even if McGee's statements had not been admitted in evidence. On the other hand, the possibility remains that he might have been acquitted.

In these circumstances, and particularly in light of the trail court's failure to include limiting instructions in its charge to the jury, I am of the opinion that the error inherent in the admission of these statements as measured by the

standards applicable when constitutional questions are involved, was not harmless beyond a reasonable doubt. In the circumstances here presented it cannot be said "that there is no reasonable possibility that the error might have contributed to [Smalls'] conviction" *(People v Crimmins, 36 NY2d 230, 237)*.

The other questions raised by this defendant do not merit discussion.

FEIN, J., concurs with ROSS, J. P.; SILVERMAN, J., concurs in an opinion; LUPIANO and BLOOM, JJ., dissent in an opinion by BLOOM, J.

Judgment, Supreme Court, New York County, rendered on June 6, 1978, affirmed.